Essie B. CLARK, Petitioner-Appellant,

v.

Raymond K. PROCUNIER, Director, Texas Department of Corrections, Respondent-Appellee.

No. 84–1575
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 18, 1985.

Lucius D. Bunton Jr. (court-appointed), Austin, Tex., for petitioner-appellant.

Jim Mattox, Atty. Gen., Robert S. Walt, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before RUBIN, RANDALL, and TATE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Because the evidence on which the Texas state prisoner was convicted of burglary in 1972 was insufficient, despite its being viewed most favorably to the state, to prove his guilt of that offense as defined by state law, we reverse the district court and grant the application for a writ of habeas corpus.

In June 1972, a jury in the 147th Judicial District Court of Travis County, Texas, found Essie B. Clark guilty of burglary. Because Clark had pleaded guilty to two prior felony charges, he was sentenced to life imprisonment under the Texas habitual offender statute.[1] He now attacks the June 1972 conviction.

The burglary occurred sometime between noon and midnight, December 18, 1971, at the Burkhalter Spring Company, an auto repair business located in Austin, Texas. The assistant manager who discovered the burglary testified that the office's windows were broken and that an inside lock on one of the doors had been forced open. The vending machines had been broken into, and tires, tool boxes, a tape player-radio, and similar items were missing.

The office safe, which was usually kept unlocked, as the three office workers and seven or eight other employees knew, had been moved from its usual place. The assistant manager testified that the safe was found in the "back part" of the building, outside a door in the west wall that opened onto Burkhalter's parking lot. An investigating officer, however, testified that the safe had not been taken completely outside the building, but was found only halfway outside the west door. At the time of the burglary, Burkhalter had 108 motor vehicle inspection stickers in the safe, which were missing after the burglary. Burkhalter was authorized by the state to issue these stickers.

The assistant manager testified that he had never seen Clark around Burkhalter's premises. Police officers dusted the entire office area for fingerprints immediately after the burglary was reported. Only one fingerprint was recovered, however, and this print could not be identified. A latent palm print was lifted from the left side of the safe. Two experts in fingerprint identification identified this print as Clark's. An expert in fingerprint identification called by the defense, however, testified that it was impossible to identify the palm print taken from the safe.

More than a month later, on January 24, 1972, Clark's wallet, containing his driver's license and two of the missing inspection stickers, was found on a street in Killeen, Texas, a town located about seventy-five miles north of Austin. Clark's wife, his employer, and a friend all testified at the trial that Clark had lost his wallet sometime in January 1972.

Following the jury's verdict, Clark unsuccessfully appealed his conviction. He then filed several applications for habeas relief in the state court system, all of which were denied. Clark next filed his present petition in federal court, contending that there was insufficient evidence to support either his 1972 conviction or his guilty pleas on the two prior felony charges used to enhance his 1972 offense. The magistrate, after a hearing, found that Clark's allegations concerning his pre-1972 offenses were without merit, but recommended that his habeas petition be granted on the basis that his 1972 conviction violated *Jackson v. Virginia.*[2] The district court, however, found the evidence sufficient to support the 1972 conviction and denied the petition.

---

1. *Clark v. State,* 500 S.W.2d 107, 108 (Tex.Crim. App.1973).

2. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Under *Jackson*, a habeas applicant is entitled to relief if no rational trier of fact, upon the record evidence adduced at trial, could find proof of guilt beyond a reasonable doubt of each of the substantive elements of the offense defined by state law. The evidence must, of course, be viewed in the light most favorable to the prosecution.[3]

The statutes under which Clark was convicted[4] defined burglary as follows: "He is also guilty of burglary who, with intent to commit a felony or theft, by breaking, enters a house [or building] in the daytime."[5] This required the state to prove that Clark broke into and entered Burkhalter's premises with intent to commit a felony or theft.

The fact that inspection stickers were found in Clark's wallet might justify the inference that he was guilty of theft. But this fact alone would not justify the inference that he had entered Burkhalter's premises.

Aside from the inspection stickers, the only other evidence linking Clark to the burglary was the palm print taken from the left side of the safe. Clark urges in his brief that the left side of the safe was outside the building; his record citations, however, do not clearly indicate this, and we are unable to ascertain from the record whether this is correct. The state, however, appears to agree with Clark's contention, stating in its brief, "the safe was just outside of a back doorway which opened onto the company's parking lot." Interpreting the evidence most favorably to the prosecution, we must construe it as establishing that the print was Clark's and that the safe was lying partially inside and partially outside the building. But the doorway in which the safe was lying was adjacent to a parking lot, and the state concedes that "the palmprint evidence alone does not negate the possibility that Petitioner placed his print on the safe after the burglary, either during a theft of the stickers or as an innocent passerby." Even if he construed the evidence most favorably to the state, a reasonable juror should have doubted that the left side of the safe was within the building.

The state argues that the palm print, combined with the inference drawn from the stickers found in Clark's wallet, was sufficient to sustain his conviction. At most, however, this evidence merely establishes that Clark stole the stickers from the safe. It is not sufficient to prove that he broke into the building to do so. The state further argues that Clark's contention at trial that the print was not his, along with his failure to offer a rational non-criminal explanation for his palm print on the safe, removes any reasonable doubt of Clark's guilt. This thesis, however, relieves the state of its burden of proving beyond a reasonable doubt "every fact necessary to constitute" the crime with which Clark was charged.[6]

"[I]f the evidence viewed in the light most favorable to the prosecution gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, then a reasonable jury must necessarily entertain a reasonable doubt."[7]

Entry into the building was not proved and cannot on the record be inferred. Therefore, the district court's judgment denying relief is REVERSED and the case is REMANDED with directions to grant relief.

**3.** *Jackson, supra* note 2, 443 U.S. at 324, 99 S.Ct. at 2791, 61 L.Ed.2d at 576.

**4.** Tex.Penal Code arts. 1390, 1395 (Vernon Appendix 1974), repealed in 1973, now codified at Tex.Penal Code Ann. § 30.02 (Vernon 1974).

**5.** Article 1395 defined "house": "A 'house' within the meaning of this chapter, is any building or structure erected for public or private use, whether the property of the United States, or this State, or of any public or private corporation or association, or of any individual, and of whatever material it may be constructed."

**6.** *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 377 (1970).

**7.** *Cosby v. Jones*, 682 F.2d 1373, 1383 (11th Cir. 1982); *Turner v. McKaskle*, 721 F.2d 999, 1001 (5th Cir.1983).